In re **AMERICAN INTERNATIONAL AIRWAYS, INC., Debtor.**

Harry P. **BEGIER, Jr., Trustee, Plaintiff,**

v.

**AMERICAN EXPRESS, INC., Defendant.**

Bankruptcy No. 84–02379K.
Adv. No. 86–0309K.

United States Bankruptcy Court, E.D. Pennsylvania.

June 18, 1987.

692

See also, 70 B.R. 102, Bkrtcy., 75 B.R. 1013.

David Fishbone, Marc N. Bell, Philadelphia, Pa., for trustee.

Harry P. Begier, Jr., Philadelphia, Pa., Trustee.

Jay G. Ochroch, Marjorie L. McMahon, Philadelphia, Pa., for defendant.

Pace Reich, Philadelphia, Pa., for debtor.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

■ The present posture of this case causes us to consider a single narrow issue: the extent to which the Chapter 11 Trustee is bound by a court-approved Stipulation of the Debtor during the time that the latter was acting as a debtor-in-possession (hereinafter referred to as "DIP"). While we believe that the Trustee is generally bound by a DIP's Stipulations, particularly in situations where the terms of the agreement specifically bind the DIP's assignees or equitable considerations, such as the Trustee's acceptance of the benefits of the Stipulation, support the binding of the Trustee, we further believe that the Trustee should have a full right to present agreement terms and equitable arguments to the contrary.

Here, the party seeking to bind the Trustee to a Stipulation by which the DIP allegedly released that party from liability in preference actions is, in effect, seeking summary judgment in its favor in a preference action without having established either the pertinent terms of the agreement nor equitable considerations in its favor. We shall therefore decline to enter judgment against the Trustee, and shall instead enter a Pre-trial Order which will bring to trial all of the relevant issues, including both the issue of whether the Trustee is bound by the Stipulation in issue and the merits of the preference action.

Significant to our disposition is the sparseness of the record. This adversarial proceeding was commenced on April 14, 1986, by the Trustee of the Debtor, HARRY P. BEGIER, as an action to require the Defendant, AMERICAN EXPRESS CO., to account for and turn over all funds which it received from the Debtor in the nature of preferential transfers. The Defendant filed an Answer on June 6, 1986, denying liability generally, raising several affirmative defenses, including 11 U.S.C. §§ 547(c)(2) and (c)(4), and pleading that, in a court-approved Stipulation of August 15, 1984, "the debtor released [the Defendant] from any and all claims ... arising under Title 11" and hence that the Complaint

asserting such claims "should be dismissed in its entirety."

The hearing was continued on several occasions, and was finally listed before us on March 11, 1987. At the request of Counsel for the Trustee, we were prepared to enter an Order relevant to not only this case, but another similar case between the same parties, at Adversary No. 85–0786K, consolidating the two matters and setting forth a schedule for disposition in a Pre-Trial Order, similar to that entered here at this time. However, we thereafter learned that Adversary No. 85–0786K was a closed matter. After reopening it by agreement of the parties, we learned that this proceeding was ultimately settled. Unfortunately, that proceeding left its mark here, as both parties erroneously placed the Adversary number from that matter on their Briefs.

Subsequent to the March 11, 1987, hearing, we received the file in this matter. On March 31, 1987, we therefore entered an Order, in this case only due to the report that Adversary No. 85–0786K was likely to be settled, requesting the parties to address "the defense that the Stipulation bars the relief in issue" by briefs to be filed by the Defendant and by the Trustee on or before April 17, 1987, and May 1, 1987, respectively.

The pleadings, as we have already indicated, convey very little detail. The Defendant embellished the pleadings with only a four-page Brief, containing no exhibits, not including even a copy of the Stipulation the terms of which it sought to enforce. It cited to but two cases, both decided by former-Chief Judge Emil F. Goldhaber of this Court, *In re Monach Circuit Industries, Inc.*, 41 B.R. 859 (Bankr. E.D. Pa., 1984); and *In re Philadelphia Athletic Club, Inc.*, 17 B.R. 345 (Bankr. E.D.Pa. 1982). The argument of the Defendant can be summed up in its statement that "[p]ursuant to the Stipulation," the DIP released the Defendant "from any and all claims arising out of or relating to" the Defendant's account towards which payments were made "including, without limitation,

any claims arising under the Code," such as the preference action in issue.

The Trustee attaches, to his Brief, copies of: (1) the Order Authorizing Expedited Hearing, Limiting Persons to Whom Notice Need Be Sent, and Shortening the Manner and Form of Notice which set the hearing. This is dated August 15, 1984, and scheduled the hearing that same day, August 15, 1984, at 3:00 P.M.; (2) A transcript of the hearing, attended by Counsel for the DIP and the Defendant, both of whom urged approval of the Stipulation, and Counsel for two creditors, American Financial Corporation and McDonnell Douglas Corporation (hereinafter referred to as "McDonnell"), both of whom cautioned against the entry of an Order approving the Stipulation without their having adequate time to examine it or the underlying facts, such as the preservation of rights of the Debtor against the Defendant;[1] and (3) The Stipulation itself, approved by our predecessor, the Honorable William A. King, Jr., without revision, immediately after the hearing.

We note that the underlying bankruptcy case was filed on July 19, 1984, and that the Debtor's tenure as DIP was short-lived, ending by the appointment of the Trustee on September 19, 1984.

The all-important Stipulation runs several pages, and is too lengthy to be reproduced in its entirety. Essentially, it was effected to allow the Defendant to release funds to the Debtor in the amount of "between $240,000.00 and $500,000.00" which were noted in records of charges by customers of the Debtor who were holders of the Defendant's credit cards, which funds the Debtor badly needed to pay salaries and essentially to remain in business at the time. Significant to the present dispute are portions of paragraph 1A, and paragraphs 2, 3, and 4, which read as follows:

1. American Express consents to AIA's [the Debtor's] assumption of the Charge Agreement upon the following terms and conditions:

A. The Charge Agreement may be terminated by American Express upon

---

1. In fact, Counsel for McDonnell specifically objected to the failure of the Stipulation to pre-

serve the DIP's rights to recover preferences from the Defendant.

five (5) calendar days written notice to AIA without further order of the Bankruptcy Court; provided, however, that American Express shall make a good faith effort to consult with AIA prior to giving such notice of termination. *The Charge Agreement will automatically terminate in the event AIA's case is converted to a case under Chapter 7 of the Bankruptcy Code or a Trustee is appointed under Section 1104 of the Bankruptcy Code....*

2. *AIA hereby releases American Express from any and all claims arising out of or related to the Corporate Card Account Agreements, the Charge Agreement or the Travel Debt, including, without limitation, any claims arising under Title 11 of the United States Code.*

3. American Express waives its rights in and to the Cash Collateral.

4. The automatic stay under Section 362 of the Bankruptcy Code shall be vacated in order to permit the parties to effectuate the terms of this Stipulation (emphasis added).

We observe that there is a tension between two competing policies at the heart of the issue of whether and when a Trustee should be bound by a DIP's Stipulation. The first policy arises from the observation that the appointment of a trustee is "an extraordinary remedy," 5 COLLIER ON BANKRUPTCY, ¶ 1104.01[7][b], at 1104–19 (15th ed. 1986), which is granted only "for cause, including fraud, dishonesty, incompetence, or gross mismanagement" by the DIP, 11 U.S.C. § 1104(a)(1), or when there is a consensus of creditors and equity holders of the estate that it is appropriate to do so. 11 U.S.C. § 1104(a)(2). *See generally* 5 COLLIER, *supra*, ¶ 1104.01[7][b] to [7][d], at 1104–19 to 1104–25. A trustee is therefore appointed only when there is something significantly amiss concerning the DIP's management of its own business. It thus appears unfair to saddle a Trustee with the results of possibly the very sort of poor management decisions which led to the DIP's divestiture from the reins of his business during the course of the Chapter 11 case in our court.

On the other hand, there is a contrary policy, as Judge Goldhaber articulately recited in *Philadelphia Athletic Club, supra,* 17 B.R. at 347:

> To hold that such a stipulation is not binding on the estate after the appointment of a trustee would greatly impair the ability of the debtor in possession to conduct its business because it would discourage third parties from dealing with the debtor in possession for fear that the court would later appoint a trustee and declare that the actions taken by the debtor in possession are invalid and not binding on the trustee.

Two other cases, not cited by either party, have been carefully considered by us in determining how to approach this issue. The first case, which elicited reported opinions from the Court of Appeals and District Court, is *Seidle v. GATX Leasing Corp.,* 778 F.2d 659 (11th Cir.1985), *aff'g,* 45 B.R. 327 (S.D.Fla.1984). In that case, the DIP entered into a stipulation with a pre-petition vendor of certain aircraft pursuant to 11 U.S.C. § 1110, whereby it agreed to make certain payments to the vendor in exchange for a right to retain the aircraft, which the Court approved over the objections of several creditors. The Trustee, replacing the DIP, shortly thereafter, declined to make the payments, surrendered the aircraft, and instituted an action to recover allegedly preferential payments made by the Debtor to the vendor. The District Court granted a Motion for summary judgment to the vendor on the grounds of both equitable estoppel and a finding that, pursuant to § 1110, the payment challenged as preferential would have had to have been made in any event, and hence the payment did not improve the vendor's position, as required by 11 U.S.C. § 547(b)(5). The Court of Appeals affirmed, referring to the second ground of the District Court's decision, based on 11 U.S.C. § 1110 and § 547(b)(5), only.

The other case is *In Re Delafield Development,* 54 B.R. 442 (Bankr. E.D.Wis. 1985). There, the Debtor, while a DIP, with the consent of all creditors, had en-

tered into a court-approved stipulation that he would make payments to certain claimants in full. Subsequently, the case was converted to a Chapter 7 case, and a Trustee was appointed. The Trustee objected to the very claims which the stipulation had provided were to be paid in full. A motion to dismiss the objections on the ground that the Trustee was bound by the stipulation was denied, on several grounds. Among those articulated by the court were its observation that the stipulation was unclear as to the impact of a conversion upon its efficacy; that any ambiguity in the stipulation should be construed against the claimants, who drafted it; the court's concern that parties who did not join the stipulation would be denied due process by its enforcement; and invocation of the bankruptcy court's right to reconsider its own orders when it considered it equitable to do so.

We believe that the facts here, when spread out on the record, may be distinguishable from those of *Philadelphia Athletic Club, supra,* and *Seidle, supra,* where Stipulations were held to bind the Trustees in issue. In *Philadelphia Athletic Club,* Judge Goldhaber emphasized that the Stipulation expressly recited that it was binding "on the Debtor, its successors and assigns." 17 B.R. at 647. Here, the Stipulation not only fails to include such a provision binding the signatory's assignee in the case of any contingencies which might later unfold, like the failure of the *Delafield* stipulation to include any mention of the impact of a conversion and appointment of a Trustee, but also, at paragraph 1A, quoted at page five *supra,* specifically provides that it "will automatically terminate" in the event of conversion or appointment of a Trustee.

Also, unlike *Seidle,* despite the fact that the DIP here was an airline, the subject matter was *not* a contract within the scope of § 1110, a rather specialized Code provision relating to security interests in aircraft "equipment and vessels." The failure of the Court of Appeals to adopt the District Court's "equitable estoppel" rationale may be indicative of its rejection of that theory. While it seems to us that two

elements of equitable estoppel, reliance and detriment to the Defendant here and the aircraft vendor there, are rather easily established, we do not believe that the third and most significant requisite element of misrepresentation by the party sought be estopped is present in either case. We fail to see how, even if a misrepresentation by the DIP were proven, this could be attributed to the Trustee.

■ We do believe that a Trustee would be bound by a DIP's Stipulation if the Trustee acted in any way to ratify the DIP's conduct by choosing to accept the benefits of the stipulation negotiated by the DIP, and this may have been the concept which the District Court in *Seidle* actually relied upon in its decision. However, here, there is no apparent element of such ratification.

Finally, the *Monach* case decided by Judge Goldhaber, the other case cited by the Defendant, brings to bear one additional element, upon which the court in *Delafield* relies in part. While the proceedings here were not technically *ex parte,* like those in *Monach,* they were conducted after extremely little prior notice to the creditors. We do not believe it necessarily follows that, because the creditors, particularly McDonnell, raised the issue that approval of the Stipulation might be insulating the Defendant from attacks on preferential transfers, the Court, in approving the Stipulation, could be said to have concluded that the Stipulation did intend to bar the DIP's right to pursue preferences against the Defendant, and then intentionally decided to give the Defendant such insulation by approving the Stipulation. It could in fact be that the Court, in approving the Stipulation, rejected the notion that its approval had any effect on the DIP's right to pursue preferences.

We do not believe that the present record supports any conclusion except that Judge King responded to circumstances represented to him as an emergency and reacted on the ground that approval was necessary to keep the Debtor afloat. There is no evidence in the record to necessarily sup-

port a determination either as to whether Judge King conceived the Stipulation to waive collection of preferences or not, or as to whether he was willing to allow the DIP to sacrifice this right or not.

It must be recalled that the Order scheduling the hearing, dispatch of notice, the hearing, and approval of the Stipulation were all accomplished within one day. Given such extremely expedited proceedings and the reduction in opportunity for reflection on the part of the interested parties or the Court which such crises create, we believe that the full implications of what took place are apt fare for reconsideration by the Court at a later date. While we recognize that the emergency may have demanded fast performances on the part of the Defendant, and that these circumstances are equities in favor of binding the DIP's successor-Trustee, we also recognize that it is possible that the emergency here was at least to some degree "tailored" by the Defendant to reduce the opportunity for notice and objections by creditors and to cause the court to make a hasty, unnecessary, and unconsionable concession to it.

In any event, we do not believe that the *Monach* case, wherein Judge Goldhaber expressed a willingness to vacate a court order obtained in circumstances where less than adequate notice was provided, supports the position of the Defendant any more than it does the position of the Trustee. While the Stipulation here was not entered *ex parte*, certainly the degree and quality of notice was diminished and rendered the proceeding closely akin to an *ex parte* proceeding.

■ In sum, we note, first, that the terms of the Stipulation did not specifically bind successors of the DIP, particularly the Trustee. While we do not think that this case should turn on the presence or absence of boilerplate stating that the Stipulation bound the DIP's successors and assigns, we believe that the language stating that the agreement will terminate upon the appointment of a Trustee may be significant. In any event, more of a record addressing the specific intentions of the parties to bar or not to bar a Trustee from

pursuit of preference actions against the Defendant at the time of the execution of the Stipulation is necessary to resolve this question. Similarly, we are somewhat uncertain, on the basis of the sparse record, as to whether equitable considerations support either the conclusion that the Trustee should be precluded from pursuing preference actions against the Defendant or the conclusion that no equitable reasons for relieving the Trustee from such a preclusion, if it is found to exist, are present here.

We consider the position of the Defendant here the be the legal equivalent of that of a movant for summary judgment in its favor and it is well-established that "summary judgment [is] 'a drastic remedy' " and that we " 'must resolve any doubts as to the existence of genuine issues of fact against the moving parties' " *In re H & H Beverage Distributors, Inc.*, 65 B.R. 243, 244 (Bankr. E.D.Pa.1986) (quoting *Hollinger v. Wagner Mining Equipment Co.*, 667 F.2d 402, 405 (3d Cir.1981); and *Betz Laboratories, Inc. v. Hines*, 647 F.2d 402, 404 (3d Cir.1981)). Therefore, we cannot enter a justment for the Defendant at this juncture.

We shall consequently issue an Order denying the Defendant's attempt to dismiss this case at this time, but include in that Order the substance of a Pre-Trial Order setting forth a schedule to dispose of this case after an opportunity for a full and complete hearing on the issue of whether the Trustee should be bound by the Stipulation, as well as the merits.

### ORDER AND PRE–TRIAL ORDER

AND NOW, this 18th day of June, 1987, after considering the present record in this case and the Briefs of the parties relevant to the issue of whether a Stipulation and Order between the Debtor-in-Possession and the Defendant of August 15, 1984, bars the Plaintiff-Trustee from pursuing this matter, it is hereby ORDERED as follows:

1. The record is inadequate to make a final disposition on this issue, and therefore the Defendant's request, in the nature of a

Motion for Summary Judgment requesting that we enter judgment in its favor is DENIED.

2. The hearing in this proceeding to determine all relevant issues shall be continued until

THURSDAY, JULY 23, 1987, at 10:00 A.M. in Court Room No. 2 (Room 3718), United States Court House, 601 Market Street, Philadelphia, PA 19106.

3. All discovery in these matters shall be completed on or before July 2, 1987, and all parties shall cooperate with the others in so doing. If any party contends that the other party has failed to make discovery requested, the party seeking discovery shall file an appropriate Motion to Compel Discovery on or before July 2, 1987.

4. If any such Motions to compel discovery are filed, a hearing on same shall be held on

THURSDAY, JULY 9, 1987, at 10:00 A.M. in Court Room No. 2 (Room 3718), United States Court House, 601 Market Street, Philadelphia, PA 19106.

5. The parties are directed to jointly prepare, file, and serve the following and submit same to the Court on or before July 16, 1987:

    a. A list of all witnesses to be called;

    b. Copies of all exhibits to be offered, pre-marked; Copies of exhibits are to be furnished to opposing counsel on or before July 13, 1987, and any exhibits to which there are objections are to be noted; and

    c. A written stipulation of all undisputed facts.

6. The parties are each directed to file and serve a Memorandum of Law on or before July 16, 1987.

7. The original copy of the items prepared per paragraph five and six hereof shall be filed with the Clerk of this Court and a copy delivered to the undersigned before 4:00 P.M. on the dates indicated.