**In re SUN OK KIM, aka Sunny Kim, Debtor.**

**In re SUNNY'S COLLECTIBLES, INC., Debtor.**

**In re THINGS EUROPEAN, INC., Debtor.**

Civ. Nos. 87–254, 87–255 and 87–256.

United States District Court,
D. Hawaii.

Dec. 17, 1987.

Mark Zen and Eric Zen, John Shimizu, Renton L.K. Nip, and Charles R. Ching, Honolulu, Hawaii, for debtor.

Jeffrey C. Wilk, Hong Iwai and Hulbert, Honolulu, Hawaii, for Liberty Bank.

Ralph S. Aoki, Honolulu, Hawaii, Trustee.

Gerald I. Fujita, Honolulu, Hawaii, Trustee.

Robert M. Ehrhorn, Honolulu, Hawaii, for Larry Takatsuka.

Milton Y.H. Soo, Honolulu, Hawaii, for Made in Italy Imports Inc.

William Meheula, Honolulu, Hawaii, for S & M Partners and 1221 Kapiolani Partners.

Deborah A. Ching, Honolulu, Hawaii, for North American Watch Corp., etc.

## ORDER AFFIRMING IN PART BANKRUPTCY COURT'S DECISION AND REMANDING IN PART

KAY, District Judge.

### I. BACKGROUND

In April of 1983, debtors Sun Ok Kim, Things European, Inc. (Things European), and Sunny's Collectibles, Inc. (Sunny's) filed for bankruptcy under Chapter 7. The three cases were consolidated for joint administration.

Things European owed Liberty Bank $309,450.23. The debt was guaranteed by Sun Ok Kim. Sun Ok Kim owed an additional $45,606.33 to Liberty Bank. Liberty Bank held a secured interest in the property of Things European.

Ralph Aoki was appointed as trustee of Things European and Sunny's. The debtors transferred all merchandise and inventory of Things European and Sunny's to the trustee. The trustee then delivered possession of these items to Liberty Bank without an appraisal or inventory accounting and without seeking to lift the automatic stay.

Liberty Bank appraised the items at $699,557.15. The parties dispute whether this evaluation is accurate, and the bankruptcy court made no determination on this issue. Liberty Bank retained Wellington International to sell the inventory, without approval of the bankruptcy court. Wellington sold the inventory for gross proceeds of $300,862.55. Liberty Bank claimed expenses of $140,138.39 consisting of the following: 1) payments to Wellington of $122,254.83, 2) payments to Liberty Bank of $12,271.59, 3) commission to the trustee of $3,008.62, and 4) gross income taxes of $2,603.45. Notice of the sale was not given to the creditors.

On January 13, 1984, Liberty Bank filed a proof of claim against Things European in the amount of $149,614.11 which consisted of its original claim of $310,338.17 less the net proceeds of the inventory sale of $160,724.16. On the same day, Liberty Bank filed a proof of claim in Sun Ok Kim's bankruptcy case in the amount of $194,332.50., which was arrived at by subtracting the net proceeds from the debt owed of $355,056.56.

The bankruptcy court did not authorize the transfer of property to Liberty Bank, the retention of Wellington, the sale of the inventory, or the compensation.

On December 11, 1985, Sun Ok Kim filed an Application for Disallowance of Claims of Liberty Bank in the Things European case as well as in her own bankruptcy case. Sun Ok Kim is the president, sole shareholder, director, and unsecured creditor of Things European.

The bankruptcy court disallowed the claims of Liberty Bank, and ordered Liberty Bank to return the proceeds of the sale to the bankruptcy estate. The court also ordered the trustee to return any funds received as a result of the sale. This order was later modified to allow Liberty Bank to retain the proceeds of the sale, since Kim had not requested that those funds be returned. Liberty Bank then filed this appeal.

### II. BANKRUPTCY COURT'S DECISION

The bankruptcy court reaffirmed the rule that a debtor or general creditor does not

generally have standing to object to a claim when a trustee has been appointed. Although the debtor may inform the trustee of the reasons why a claim may be improper, only the trustee has the right to object to a claim. A general creditor is treated similarly. The court requires that objections be raised by a single voice, the trustee, who will serve as the spokesperson for the estate and general creditors. *In re Savidge*, 57 B.R. 389, 392 (D.Del.1986).

There are several exceptions to this rule, where there is no trustee, where the trustee refuses to object after formal notice is given by the debtor or creditor, or where the unsecured creditor expends his own resources to object and the balance of equities weighs against dismissing the objection. The bankruptcy court held that none of these usual exceptions specifically applied in this case.

However, the bankruptcy court felt that a new exception should be created where the trustee's improper actions are a part of the reason for the objection. Under the circumstances of this case, the court held that it would have been futile for Kim to raise his objections with Ralph Aoki, and therefore Kim had standing to object.

The court then disallowed Liberty Bank's claims against Things European. The court also disallowed Liberty Bank's claim against Sun Ok Kim, except for $45,606.33 (for a debt independent of the inventory-secured claim).

Appellant raises two issues in this appeal: 1) whether Sun Ok Kim as either debtor or creditor has standing to object to Liberty Bank's claims against Things European and Sun Ok Kim; and 2) whether the bankruptcy court properly disallowed the claim under rules other than 11 U.S.C. § 502(b).

■ A. *Standing.* The issue of standing presented here is statutory rather than constitutional. Under 11 U.S.C. § 502(a), only a "party in interest" may object to a claim. Technically, any creditor or even a debtor could be considered a party in interest since they have an interest in the validity of the claim. Colliers on Bankruptcy, ¶ 502.01[2] pp. 502-9—502-14 (15th Ed.

1986). However, the trustee acts as the spokesperson for all general creditors in order to efficiently administer the estate. *In re Savidge*, 57 B.R. 389, 392 (D.Del. 1986). The debtor's role is limited to advising the trustee of the validity or invalidity of the claim. The trustee then decides whether to object.

If the trustee is formally notified and refuses to make an objection, either the debtor or the creditor may then ask the bankruptcy court to disallow the claim. *Id.* at 390.

In the present case, the bankruptcy court held that it would have been futile to ask Ralph Aoki, the trustee, to make the objection, since Ralph Aoki had transferred the property to Liberty Bank for auction without court approval. Thus, requiring the debtor to make a formal objection to the trustee would in this case undermine the goal of efficiency which the rule is intended to promote.

In *In re Meade Land & Development Co., Inc.*, 1 B.R. 279 (Bkrtcy.E.D.Penn. 1979), an unsecured creditor objected to the claim by another unsecured creditor without first asking the trustee to do so. The objecting party assumed the cost of bringing the action. The court stated:

> By a technical application of the law, the action could be dismissed and the Trustee requested to institute a new action. Such an order would serve to merely deplete the time, money, and effort of all parties concerned. Thus, since the Plaintiff has voluntarily assumed the costs of this action, and in balancing the equities involved, this Court will proceed to decide this case on the merits.

*Id.* at 282 (citations omitted). Likewise, as in this case, when the objection is based on the wrongdoing of the trustee such that it is apparent that filing the objection with the trustee would be futile, it would be wasteful of both time and resources to require an objecting debtor or creditor to file the objection with the trustee. Therefore, this court concludes that Sun Ok Kim had standing to object to Liberty Bank's claim.

B. *Basis for Disallowance.* The bankruptcy court's basis for the disallowance of Liberty Bank's claim is not clear. The bankruptcy court made no explicit finding that the sale which was conducted in violation of the automatic stay was commercially unreasonable. Since the sale took place at the time when there was an automatic stay, and without court approval, it may be that Liberty Bank's claims were disallowed as a sanction. In the bankruptcy court's order which revised its initial decision, the court states that it will consider "whether the sanctions as imposed by this Court [were] proper under the circumstances." The order also states, however, that "no motion for contempt or for sanctions for willful violation of the automatic stay was filed by any party." Thus, it is not clear at this point why the claim filed by Liberty Bank was disallowed.

Although a bankruptcy court has certain equitable powers recognized by 11 U.S.C. § 510(c), such as to subordinate a claim after notice and a hearing when a creditor has acted inequitably, these powers should not be invoked as a penalty, but only to the extent that any inequitable conduct by the creditor actually caused injury to the bankruptcy estate or other creditors. *In re Westgate–California Corp.,* 642 F.2d 1174 (9th Cir.1981). Thus, there should have been a determination of the fair market value of the secured property which was wrongfully turned over by the trustee to Liberty Bank and then sold. If the sale was conducted in a commercially unreasonable manner, the bankruptcy estate may have suffered a loss. The court notes, however, that it may be difficult, if not impossible, at this date to make these findings. In any event, it would appear incongruous that the bankruptcy court allowed Liberty Bank to retain most of the proceeds of the sale, but disallowed Liberty Bank's claim.

In view of the fact that the sale of the property was conducted while the property was under an automatic stay and without court approval, such was in violation of the law, and the bankruptcy court properly held that neither Wellington, Liberty Bank, nor the trustee are entitled to any fees or expenses in connection with the sale.

Therefore, the Bankruptcy Court's decision is AFFIRMED to the extent it held Sun Ok Kim had standing to object to Liberty Bank's claim and to the extent it disallowed any fees or expenses to Wellington, Liberty Bank, and the Trustee in connection with the subject sale. It is hereby ORDERED that the matter of Liberty Bank's claim be REMANDED to the Bankruptcy Court for express findings in accordance with the foregoing.