### In re GULPH WOODS CORPORATION, Debtor.

### NASSAU SAVINGS AND LOAN ASSOCIATION, Plaintiff,

v.

### Mitchell W. MILLER, Trustee, Maurice W. Baehr, Trustee, David Mermelstein, Safeco Title Insurance Company of Maryland, and John S. Trinsey, Jr., Defendants.

Bankruptcy No. 87–03093S.
Adv. No. 89–1016S.

United States Bankruptcy Court, E.D. Pennsylvania.

July 16, 1990.

---

Leonard Goldberger, Philadelphia, Pa., for plaintiff and Resolution Trust Corp.

Edward J. DiDonato, Paul J. Winterhalter, Philadelphia, Pa., for defendant-trustee Mitchell W. Miller.

Mitchell W. Miller, Philadelphia, Pa., Trustee.

Rania M. Major, Philadelphia, Pa., for defendant Trinsey.

John S. Trinsey, Jr., Royersford, Pa., pro se.

Lawrence T. Phelan, Philadelphia, Pa., for defendant David Mermelstein.

George B. Ditter, Ambler, Pa., for debtor.

Alexander N. Rubin, Philadelphia, Pa., for defendant Safeco Title Ins. Co. of Maryland.

Stephen Raslavich, Philadelphia, Pa., for defendant-Trustee Maurice W. Baehr.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

On June 14, 1990, RESOLUTION TRUST CORPORATION ("RTC"), as Receiver for the Plaintiff in this proceeding, NASSAU SAVINGS AND LOAN ASSOCIATION ("the Plaintiff"), filed a Motion for Partial Summary Judgment ("the Motion") pursuant to Bankruptcy Rule ("B.Rule") 7056 seeking judgment in its favor with respect to Count VII of the Complaint in the above-captioned proceeding. Count VII of the Complaint attacks the standing of Defendant JOHN S. TRINSEY, JR. ("Trinsey") to assert a claim to the proceeds of a federal marshal's sale of July 19, 1989, of a parcel of property ("the Fund") known as Rebel Hill ("the Property"), the principal asset of the Debtor, GULPH WOODS CORPORATION ("the Debtor"), and Trinsey's entitlement to any distribution from

the Fund. We conclude that RTC has failed to show the absence of an issue of material fact as to whether Trinsey lacks an equitable interest in the Fund, as would be required by B.Rule 7056 and Federal Rule of Civil Procedure ("F.R.Civ.P.") 56 to grant this Motion. Therefore, the Motion must be denied.

## B. PROCEDURAL HISTORY

The tortured histories of the underlying bankruptcy case of the Debtor and Trinsey's personal Chapter 7 bankruptcy case are set forth in previous Adjudications reported or to be reported as *In re Gulph Woods Corp.*, 84 B.R. 961 (Bankr.E.D.Pa. 1988), *aff'd,* C.A. No. 88–4081 (E.D.Pa. Feb. 24, 1989); *In re Trinsey,* 115 B.R. 828 (Bankr.E.D.Pa.1990) (*"Trinsey II"*) and *In re Trinsey,* 114 B.R. 86 (Bankr.E.D.Pa. 1990) (*"Trinsey I"* [1]). The earlier Opinions also document the misguided efforts of Trinsey to refuse to accept adverse court decisions and to attempt to establish himself as a local version of Anthony R. Martin–Trigona. *See Trinsey II,* 115 B.R. at 831, 835–36; and *Trinsey I,* 114 B.R. at 89. *Compare In re Martin–Trigona,* 737 F.2d 1254, 1256–57 (2d Cir.1984).

The trial on the matters raised in the Complaint underlying this proceeding is scheduled for July 25, 1990. In order to understand the instant Motion, it is necessary to understand the nature of this Complaint as an effort to resolve all of the issues arising out of the marshal sale of July 19, 1989, and its unconsummated predecessor-sale of May 10, 1989.

Count I of the Complaint requests the absolute forfeiture of two deposits, totaling over $1.7 million, made at the two scheduled sales by Defendant DAVID MERMELSTEIN ("Mermelstein"), who twice defaulted as purchaser of the Property at the sales. Count II of the Complaint requests that the Fund, including Mermelstein's forfeited deposits, be distributed first to RTC, next to junior lienholders on the Property, and finally to Debtor's estate for distribution in accordance with 11 U.S.C. § 726. Count III, as an alternative to Count II, requests that the Fund be distributed to junior lienholders on the Property and then to the Debtor estate for distribution in accordance with § 726. Count IV of the Complaint requests that a claim of Defendant SAFECO TITLE INSURANCE CO. OF MARYLAND ("Safeco") be subordinated to RTC's claims and that Safeco receive no distribution from the Funds until after RTC is paid in full. Count V of the Complaint deals with a claim ("the Farrell Claim") which Mermelstein purchased in May, 1989, and which is secured by a junior mortgage against the Property. This count requests that the Farrell Claim be equitably subordinated to all other creditors' claims, or, in the alternative, be limited to the amount actually paid for the claim. Count VI requests that sanctions be imposed against Mermelstein for his various alleged frivolous filings.

Count VII, the last count of the Complaint, and the only one in issue in the Motion, relates to Trinsey and provides as follows:

36. Paragraphs 1 through 35 hereof are hereby incorporated by reference as if more fully set forth at length.

37. By Orders dated August 25, 1989 in the District Court Litigation, Judge Pollak ruled that Trinsey had no independent standing to address questions relating to the consummation of the July 19, 1989 sale.

38. As a Chapter 7 debtor, Trinsey has no standing to assert any claims against the Fund. Such claims, if any, belong to Trinsey's Chapter 7 estate and may only be asserted by Baehr in his capacity as representative of the estate.

WHEREFORE, Nassau respectfully requests that this Court enter a judgment declaring that Trinsey has no

---

**1.** *Trinsey I* involved an adjudication, on a Complaint by the instant Plaintiff, denying Trinsey a discharge in his Chapter 7 case. *Trinsey II* addressed an Application by an attorney to serve as Trinsey's co-counsel receiving handsome compensation from the instant Debtor's estate.

Essentially, these Opinions chronicle the developments subsequent to our decision in *Gulph Woods,* granting the instant Plaintiff relief from the automatic stay to foreclose upon Rebel Hill, resulting in the marshal sale which created the Fund the contents of which are in dispute.

standing to assert any claim against the fund; that Trinsey has no entitlement to any distribution from the Fund; alternatively, that any distribution from the Fund to which Trinsey may be entitled is property of his Chapter 7 estate and may only be paid to Baehr; for Nassau's attorneys fees and costs; and for such other and further relief as is just.

This Motion was filed for the salutary purpose of preventing the gross waste of time which Trinsey's verbosity and efforts to relitigate prior Orders are anticipated to visit upon this court during the trial.

This is especially significant because all of the Defendants, including the Trustees of the Debtor's estate and Trinsey's estate, respectively, MITCHELL W. MILLER, ESQUIRE ("Miller") and MAURICE W. BAEHR ("Baehr"), reported, when this proceeding was last listed for trial on a must-be-tried basis of February 7, 1990, that all parties, with the exception of Trinsey, had reached a settlement. After a conference of May 29, 1990, to determine the status of this proceeding, when the settlement failed to appear, we set the trial date.[2] We should also note that (1) Miller indicated a possible intention to repudiate the settlement, causing Mermelstein to file a motion to enforce the settlement which is also listed for trial on July 25, 1990, with previously-filed Motions of Mermelstein to recover his deposits; and (2) We expressed doubt whether a settlement could be reached without the acquiescence of all parties, in light of Trinsey's dissent. Of course, the parties could still present their settlement and the litigation proceed forward just as to Trinsey. In retrospect, it is unfortunate that Trinsey was named as a party. It is, we submit, somewhat unusual to join a party to a lawsuit merely to obtain a declaration that he doesn't belong to it. Most of the substance of the litigation may result from Trinsey's inevitable Objections to a likely settlement.

We also note that, on May 22, 1990, we continued the completion of the most recent in Trinsey's stream of motions to re-

move both Miller and Baehr until the disposition of this proceeding. We are therefore carrying along the listing of those matters on July 25, 1990, as well.

In its Motion and supporting Brief, RTC argues that, because Trinsey has no independent legal interest in the Fund arising from the sale of the Property or under bankruptcy law, he has no greater entitlement to standing in the litigation than any other creditor. Recited in support of its position is an Order of August 25, 1989, of District Judge Louis H. Pollak which stated that Trinsey has no independent standing to question the sale of the Property. RTC argues that this Order binds this court to conclude in its favor.

RTC also argues that any interest Trinsey had in any property of the estate, which includes the Fund, prior to conversion of the Debtor's case to Chapter 7, passed to his and/or the Debtor's respective Trustees upon the respective conversion of the Debtor's and Trinsey's own cases, extinguishing Trinsey's personal interest therein, citing, *e.g., Krank v. Utica Mutual Ins. Co.,* 109 B.R. 668, 669 (E.D. Pa., *aff'd,* 908 F.2d 962 (3d Cir.1990); *Cain v. Hyatt,* 101 B.R. 440, 41–42 (E.D.Pa. 1989); and *In re James,* 112 B.R. 687, 695–97 (Bankr.E.D.Pa.1990). RTC argues that the only interest, if any, that Trinsey may have in the Fund is a residuary interest under 11 U.S.C. § 726(a)(6). Such an interest, it argues, is not an independent interest in the Fund giving Trinsey standing to make a claim against the Fund. Further, RTC contends that to grant Trinsey standing would mean that all other creditors must be joined in this litigation. In fact, it argues, all such individuals, including Trinsey, are adequately represented by Miller and Baehr.

On June 15, 1990, after our receipt of the Motion, we entered an Order requiring RTC to file a Brief in support of its Motion by June 27, 1990, and for Trinsey and any other parties to respond or comment by July 11, 1990. Trinsey and both of the Trustees filed Briefs with respect to the

---

**2.** Ironically, this date was selected to accommodate Rania M. Major, Esquire, Trinsey's proposed counsel who we are advised, in light of *Trinsey II,* has passed from the scene.

Motion on July 11, 1990. The Trustees support RTC's Motion, making the same arguments advanced by RTC in its Brief. Trinsey, as might be anticipated, opposes the Motion and, in his usual fashion, embellishes his submission with attacks on a large variety of the Orders of this court and of Judge Pollak, irrespective of their finality, which have "persecuted" him, the "innocent victim" of the federal court system, RTC and the "saboteur" Trustees.

## C. DISCUSSION

### 1. *RTC Must Show That It is Entitled to the Relief Sought as a Matter of Law to Succeed in This Motion.*

F.R.Civ.P. 56(a) provides that a claimant, such as RTC, may move for summary judgment in his or her favor as to all or any part of a claim, as RTC has done. 6 J. MOORE, FEDERAL PRACTICE, ¶ 56.20[3.–0], at 56–684 (2d ed.1990). The purpose of the summary judgment, or partial summary judgment, procedure is to promptly dispose of actions in which there is no genuine issue as to any material fact. *Id.* at ¶ 56.04[.1], at 56–60. In ruling on a motion for summary judgment, the court's function is to determine whether a genuine issue as to a material fact exists, not to resolve any factual issues. The court must deny summary judgment where there is a genuine issue as to any material fact. *Id.* at ¶ 56.15[1.–0], at 57–201 to 56–202.

Because of the serious consequences of summary judgment, RTC, as the movant, bears the initial burden of demonstrating that there is no genuine issue as to any material fact before the court. F.R.Civ.P. 56(c); and *Celotex Corporation v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). *See also In re Jackson*, 92 B.R. 987, 990 (Bankr.E.D.Pa.1988). The burden then shifts to Trinsey to establish that there is a genuine issue of material fact for trial. *Celotex, supra,* 477 U.S. at 324, 106 S.Ct. at 2553.

Courts are mandated to "resolve any doubts as to the existence of genuine issues of fact against the moving parties" in a Rule 56 motion. *In re American International Airways*, 74 B.R. 691, 696

(Bankr.E.D.Pa.1987) (quoting *In re H & H Beverage Distributors, Inc.*, 65 B.R. 243, 244 (Bankr.E.D.Pa.1986), quoting in turn *Betz Laboratories, Inc. v. Hines*, 647 F.2d 402, 404 (3d Cir.1981)). Additionally, any "inferences to be drawn from the underlying facts contained in the evidential sources submitted to the trial court must be viewed in the light most favorable to the party opposing the motion." *Goodman v. Mead Johnson and Company*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). *See also Peterson v. Lehigh Valley District Council*, 676 F.2d 81, 84 (3d Cir.1982).

Summary judgment may only be granted in the limited circumstances "when there is no material issue of fact or a lack of evidence to support a claim." *Jackson, supra,* 92 B.R. at 990. Where there is evidence to be weighed, summary judgment is not appropriate. *Id.*

We have consistently been reluctant to grant motions for summary judgment. While the Supreme Court stated that summary judgment is not to be regarded as "a disfavored procedural short-cut," *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553, most decisions of the Court of Appeals for the Third Circuit have characterized summary judgment as a "drastic remedy." *See Hollinger v. Wagner Mining Equipment Co.*, 667 F.2d 402, 405 (3d Cir.1981); *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir.1982); and *Tomalewski v. State Farm Insurance Co.*, 494 F.2d 882, 884 (3d Cir.1974). *But see Childers v. Joseph*, 842 F.2d 689, 693–95 (3d Cir.1988).

We have also frequently characterized the award of a summary judgment as a "drastic remedy." *See In re Glen, Iha v. Glen,* 115 B.R. 837, 842 (Bankr.E.D.Pa. 1990); *Jackson, supra,* 92 B.R. at 990–91; *In re Saler*, 84 B.R. 45, 48 (Bankr.E.D.Pa. 1988); and *In re Leedy Mortgage Co.*, 76 B.R. 440, 445 (Bankr.E.D.Pa.1987). We have therefore resisted the temptation to decide such motions in favor of movants on the basis of expediency. *See Glen, supra,* 115 B.R. at 838. We must view the facts at hand in this light.

## 2. *Trinsey Has Standing To Participate In This Proceeding, Since a Surplus Payable to Him May Be Generated in the Debtor's Bankruptcy Case.*

■ RTC and the Trustees are correct in their assertion that, once a trustee is appointed in a bankruptcy case, the trustee, not the debtor or the debtor's principal, has the capacity to represent the estate and to sue and be sued under 11 U.S.C. §§ 323(a) and (b). *See Bauer v. Commerce Union Bank,* 859 F.2d 438, 441 (6th Cir.1988); *Vreugdenhil v. Hoekstra,* 773 F.2d 213, 215 (8th Cir.1985); *John L. Motley Associates v. Rumbaugh,* 97 B.R. 182, 185 (E.D. Pa.1989); *Transload & Transport, Inc. v. American Mariane Underwriters, Inc.,* 94 B.R. 416, 419–20 (E.D.La.1988); and *Hancock Bank v. Jefferson,* 73 B.R. 183, 185 (S.D.Miss.1986), as well as the cases cited at page 426 *supra.*

Section 541 of the Bankruptcy Code provides that the commencement of a case under Title 11 creates an estate consisting of all legal and equitable interests of the debtor in property as of the commencement of the case. This section has been interpreted very broadly to include all types of property, tangible and intangible, and causes of action. After the estate is created and a trustee appointed, although title in the property of the estate vests in the estate and not in the trustee, the trustee is the authorized individual through whom the estate acts as its representative under 11 U.S.C. § 323(a). 2 COLLIER ON BANKRUPTCY, ¶ 323.01, at 323–2 (15th ed.1989).

■ Section 323(b) enables the Trustee to perform his duties as required under 11 U.S.C. §§ 704, 1106 or 1302 and B.Rule 6009. B.Rule 6009 provides as follows:

> With or without court approval, the trustee or debtor in possession may prosecute or may enter an appearance and defend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding in behalf of the estate before any tribunal.

The trustee is granted complete authority and discretion with respect to the prosecution and defense of any litigation of the Debtor's estate. 2 COLLIER, *supra,* ¶ 323.02[3], at 323–7. *See also Bauer, supra,* 859 F.2d at 441 (6th Cir.1988) ("The trustee is empowered to compromise causes of action belonging to the bankruptcy estate.").

■ RTC thus presents a very convincing argument that the Trustees have full authority to represent the respective estates' interests in the instant proceeding. However, standing in a bankruptcy case is unlike standing in other cases. Even though the trustee is the representative of the estate, the debtor or the debtor's principal may, in certain instances, participate in a particular proceeding independent from the estate's trustee.[3]

A significant body of case law holds that a debtor may participate in litigation if that litigation will generate or protect a surplus in the estate. In *In re Silverman,* 10 B.R. 734, 735 (Bankr.S.D.N.Y.1981), *aff'd,* 37 B.R. 200 (S.D.N.Y.1982), the court stated that

> [i]t is hornbook law that a bankrupt is restricted to objecting to creditors' claims only in cases where there is no trustee who could properly object *or where a disallowance of the claim objected to would produce a surplus for the bankrupt.* (citations omitted). Since there is a trustee in this case, the bankruptcy asserts that he has standing because, if successful, there will be a surplus left for him (emphasis added).

*In Silverman,* the court ultimately concluded that there was no merit to the debtor's assertion that, if successful, a surplus in the estate would be created, and dismissed his objection. *Id.* at 736. However, the court's language clearly implied that, if

---

**3.** For example, B.Code § 554(a) permits a trustee, after notice and a hearing, to abandon property of the estate, including a cause of action, which is either burdensome or of inconsequential value and benefit to the estate. Any such abandoned property may be dealt with by the debtor itself as if no trustee were appointed. The standing of a debtor to participate in litigation discussed here is in addition to that conferred by abandonment.

the debtor *could* have shown that there may have been a surplus for his estate, he would have had standing, independent of trustee, to object to the claim in question.

Directly on point is *In re McCorhill Publishing, Inc.*, 89 B.R. 393, 395–96 (Bankr.S. D.N.Y.1988), where the court concluded that a Chapter 11 debtor was a party in interest with standing, independent of the trustee, to object to a creditor's claim in that the debtor sought to create equity in the estate. Addressing this issue, the *McCorhill* court, at *id.*, states as follows:

> The issue therefore, is to what extent, if any, may a Chapter 11 debtor and its principals have standing against a creditor to recover for damages to the debtor's potential equity after the appointment of a Chapter 11 trustee who asserts affirmative defenses against the creditor's claim in order to reduce such claim for the benefit of the remaining creditors.

The *McCorhill* court held that the debtor there had standing to protect its equity interests. *Id.* at 396. The court pointed out that "it is not the Chapter 11 trustee's primary function to produce an equity for the debtor." *Id.* Rather, the "debtor possesses a direct pecuniary interest" in the surplus of the estate "which would not implicate the rights of the Chapter 11 trustee." *Id.*

Another case addressing the right of a Chapter 7 debtor to object to a claim is *In re Sun Ok Kim*, 89 B.R. 116 (D.Hawaii 1987). There, the debtor desired to object to the claim of a creditor on the ground that the trustee wrongfully transferred property to the creditor without court approval. *Id.* at 118. Since the debtor's objection was based on the trustee's wrongdoing, notwithstanding the fact that the debtor's role is traditionally limited to advising the trustee of the validity or invalidity of the claim, the court determined that it would be futile to require the debtor to file the objection in connection with the trustee and concluded that he had standing to object to the claim himself. *Id.*

The First Circuit Court of Appeals confronted the issue of whether a debtor has standing to appeal a bankruptcy order in *In re El San Juan Hotel*, 809 F.2d 151, 155 n. 6 (1st Cir.1987), concluding that

> [t]here are two exceptions to this general rule [that only the trustee has standing to appeal from a bankruptcy order]: 1) if a successful appeal by the debtor would create an estate that has assets in excess of liabilities, *York Inter. Building, Inc. v. Chaney*, 527 F.2d 1061 (9th Cir.1975), and 2) an appeal taken from orders that affect the terms, conditions and extent of a debtor's discharge, *Abel v. Campbell*, 334 F.2d 339 (5th Cir.1964).

Other courts have afforded individuals and entities standing to take actions usually restricted to the trustee where the trustee refuses to act. *See, e.g., Abel v. Campbell*, 334 F.2d 339, 341 (5th Cir.1964) ("Because the tax liability survives ... the bankruptcy, the bankrupt has standing to attack the proof of claim before the Referee and a right to appeal an adverse judgment as would an ordinary creditor."); *In re T.P. Long Chemical, Inc.*, 45 B.R. 278 (Bankr.N.D.Ohio 1985) (EPA had standing to bring a § 506(c) action where the EPA assumed the trustee's duty to remove hazardous waste); *In re Virginia Mansion Apartments, Inc.*, 102 B.R. 444, 445 (Bankr.W.D.Pa.1989) (prior owner of debtor who was an indemnitor on an agreement to pay the debtor's taxes has standing to challenge the imposition of taxes upon the debtor); *In re Philadelphia Light Supply Co.*, 39 B.R. 51, 52–53 (Bank.E.D.Pa.1984) (Creditors' Committee had standing to bring a § 547 preference action where the trustee/debtor in possession refused to act and the creditors had a colorable claim); and *In re Isaac Cohen Clothing Corp.*, 39 B.R. 199, 200–01 (Bankr.S.D.N.Y.1984) (landlord had standing to recover his expenses under § 506(c)).

The Third Circuit Court of Appeals has expressed a broad view of the standing requirement in several bankruptcy-law contexts. In *In re McKeesport Steel Castings Co.*, 799 F.2d 91, 93–95 (3d Cir.1986), the Court ruled that a creditor had standing to invoke 11 U.S.C. § 506(c) despite the apparent confinement of the language of that

Code section to invocation by the trustee. More recently, in *Gaglia v. First Federal Savings & Loan Association,* 889 F.2d 1304, 1309 (3d Cir.1989), that Court held that the Chapter 7 debtors were "parties in interest" having standing to maintain an action under §§ 506(a), (d) to avoid liens against their real property without the participation of the Trustee.

This court has been particularly reluctant to dismiss interested parties' claims on the basis of lack of standing. In *In re Morrison,* 69 B.R. 586, 589 (Bankr.E.D.Pa. 1987), discussing the right of a creditor to attack another creditor's claim, we stated that "[u]nless the Code is clear in stating otherwise, we believe it just to accord any party expending the time and financial resources to raise a claim the opportunity for a disposition on a less technical basis." Similarly, in *In re United Church of the Ministers of God,* 74 B.R. 271, 276 (Bankr. E.D.Pa.1987), we stated that "we are most reluctant to decide issues put before us on the ground that a party avidly expressing a legal position should not be allowed to do so on the basis of lack of standing." *See also In re Brantz,* 106 B.R. 62, 63 (Bankr. E.D.Pa.1989) (creditor permitted to attack the secured status of another creditor); *In re Nicolet, Inc.,* 80 B.R. 733, 737–40 (Bankr.E.D.Pa.1987) (Creditors' Committee freely permitted to sue on behalf of a debtor reluctant to do so); and *In re Young,* 70 B.R. 968, 970–71 (Bankr.E.D.Pa.1987) (successor-in-interest of debtor permitted to reopen and raise issues in debtor's case).

### 3. Summary Judgment as to Count VII of Its Complaint Cannot Be Granted to RTC.

In the instant proceeding, Miller, the Debtor's Trustee, has proposed a distribution scheme which would result in a surplus of $60,000 for the estate. Therefore, it is clear that some surplus is likely to be created in the administration of this case. Trinsey is the Debtor's principal shareholder. In his submissions, though inartful and replete with irrelevant, venomous dross, Trinsey makes clear that he not only wishes to protect that surplus, but believes that it should be greatly increased. It

hence seems clear that the Debtor's estate will have some surplus, and we cannot say, as a matter of law, that it should not have an even larger surplus than Miller envisions. Therefore, we cannot and will not say that, as a matter of law, there will be no surplus which would give rise to Trinsey's standing to make a claim on behalf of the Debtor's estate. RTC's Motion must therefore be denied.

The invocation of cases such as *Krank, Cain,* and *James* does not support the conclusion urged by RTC. These cases held that Chapter 7 debtors seeking to litigate claims totally apart from the trustees of their respective cases lacked standing to do so. However, when the trustee *is* a participant in the litigation, the debtor clearly *may* act on behalf of the estate. Thus, in *James,* the debtor *was allowed* to proceed with litigation as long as she joined the trustee as a party. 112 B.R. at 695–97. *Compare Crossley v. Lieberman,* 868 F.2d 566 (3d Cir.1989) (Chapter 7 debtor allowed to litigate a cause of action in bankruptcy court without the trustee's participation); and *In re Fricker,* 113 B.R. 856, 860 n. 2 (Bankr.E.D.Pa.1990) (trustee's waiver of any claim against parties sued by a debtor allows a Chapter 13 debtor to proceed with the litigation without joining the trustee as a party).

Finally, Judge Pollak's holding that Trinsey had no standing to challenge the validity of the marshal's sale in the foreclosure litigation is not conclusive of the issue before us. That non-bankruptcy litigation involved the issue of the validity of certain discrete actions of the Plaintiff. On the other hand, bankruptcy jurisdiction allows "a veritable forum of expression from the various parties interested in [a particular] matter: ..." *In re St. Mary Hospital,* 86 B.R. 393, 395 (Bankr.E.D.Pa. 1988). Thus, the concept of standing in bankruptcy cases must be broad, since the case addresses all aspects of the debtor's economic picture.

At issue in this proceeding are the rights of various parties interested in this case to the Fund, which is practically the only as-

set of the Debtor. The Fund is of sufficiently substantial magnitude that it may well render the Debtor solvent. Trinsey, as the principal shareholder of a possibly-solvent debtor, has standing to participate in a proceeding which will determine the ultimate magnitude of and rights to the distribution of the proceeds of the Fund. Thus, the questions relating to the forfeiture of Mermelstein's deposits raised in this bankruptcy-court proceeding, *see* page 425 *supra*, are not the equivalent of Trinsey's challenging the consummation of the sale of the Property in a non-bankruptcy proceeding, concerning which the district court held that Trinsey lacked standing to participate. While we agree with the Trustees that continued intervention by Trinsey will probably not be helpful, his purported lack of standing is not a ground upon which we can preclude his participation in this proceeding.

### D. CONCLUSION

RTC's Motion will, therefore, be denied.