In re H & H BEVERAGE DISTRIBU-
TORS, INC., Debtor.

H & H BEVERAGE DISTRIBUTORS,
INC., Plaintiff,

v.

Henry KARLOFF, Defendant.

Bankruptcy No. 84–00188K.
Adv. No. 86–0189K.

United States Bankruptcy Court,
E.D. Pennsylvania.

Sept. 24, 1986.

J. Raymond Munholland, Erdenheim, Pa.,
for plaintiff/debtor.

Michael A. Cibik, John F. Gehring, Phila-
delphia, Pa., for defendant.

## MEMORANDUM OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

This matter is before the Court on the
Defendant's Motion for Summary Judg-
ment in this adversarial proceeding in
which the Plaintiff is the Debtor. The De-
fendant seeks summary judgment dismiss-
ing the Plaintiff's three-count Complaint to
compel the turnover of a 1983 Oldsmobile
sedan under 11 U.S.C. § 543; to avoid an
alleged preferential transfer of $50,000.00
under 11 U.S.C. § 547; and, alternatively,
to avoid the same transfer under 11 U.S.C.
§ 548 of the Bankruptcy Code, as well as
seeking summary judgment on his counter-
claim for sanctions pursuant to 28 U.S.C.
§ 1927, Fed.R.Civ.P. 11 and Bankruptcy
Rule 9011. We will deny the Defendant's
Motion because we believe that material
factual questions exist before any of the
Counts of the Complaint can be resolved.
We also urge the parties to seek to resolve
this matter amicably in light of this Opin-
ion.

The undisputed facts of this case are as follows:

The Plaintiff filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code on January 20, 1984, and the Plaintiff has continued in Debtor-in-Possession status. The Defendant was formerly president and majority shareholder of the Debtor.

Relevant to the first Count are the following facts. The Defendant is in possession of one (1) 1983 Oldsmobile sedan, which came into his possession in late 1982. The certificate of title is in the Defendant's name, with Continental Bank ("the Bank") named as lienholder in the amount of $13,-318.01. However, the vehicle was purchased with financing from the Bank by means of a "Commercial Term Promissory Note" and "Security Agreement" of October 4, 1982, in the Debtor's name. The Debtor also alleges that it made monthly payments on these obligations until March, 1984, in the total amount of $4,716.82. It is not alleged by either party who made payments thereafter or what the status of the obligations to the Bank are at present, but the vehicle indisputably remains in the Defendant's possession.

Relevant to the Second and Third Counts are the following facts. On or about December 30, 1983, the Defendant received the sum of $50,000.00 from his son, Howard Karloff (hereinafter "the Son"), who was the Secretary-Treasurer of the Debtor and who assumed the additional position of President upon said transfer.[1] The Son had been actively involved in the operations of the Debtor from 1977 through October, 1985, and was personally familiar with its business affairs. Just prior to the payment of the $50,000.00, the Son and the Defendant entered into a written agreement dated December 15, 1983, wherein, inter alia, the Defendant would transfer and sell his sixty (60) shares constituting sixty percent (60%) of the issued and outstanding capital stock of the corporation to the Son for a total consideration of $100,000.00. The agreement provided that a $50,000.00 payment in cash or certified check would be made within fifteen (15) days from the date of the signing of said agreement provided that other conditions and terms that were also contained in the agreement were satisfied and met. It is this initial payment, made on or about December 30, 1985, which is the subject of the Second and Third Counts of the Complaint.

With respect to the Defendant's Counterclaim, the following are the only undisputed facts. J. Raymond Munholland, Esquire, is the Debtor's Counsel of record. On or about February 20, 1986, he sent a letter to Alan R. Schwartz, Esquire, as Attorney for Defendant (Exhibit C to Defendant's Motion). The Defendant claims that this letter constituted a request for counsel fees from the Defendant for services which were duplicative of those for which the Court had already ordered Counsel to be compensated. Mr. Munholland denies that the letter makes such a request.

In order to be entitled summary judgment, under Fed.R.Civ.P. 56, which is applicable to adversarial proceedings through Bankruptcy Rule 7056, the moving party must demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". The United States Court of Appeals for the Third Circuit has characterized summary judgment as "a drastic remedy," and has stated "that courts are to resolve any doubts as to the existence of genuine issues of fact against the moving parties." *Hollinger v. Wagner Mining Equipment Company*, 667 F.2d 402, 405 (3d Cir.1981); *Betz Laboratories, Inc. v. Hines*, 647 F.2d 402, 404 (3d Cir. 1981). Additionally, the Third Circuit has held that "inferences to be drawn from the underlying facts contained in the evidential sources submitted to the trial court must be viewed in the light most favorable to the party opposing the motion." *Goodman v.*

---

1. It is also undisputed that Howard Karloff's wife, Carol Karloff, was somehow involved in the borrowing of these funds but the precise nature of her involvement cannot be ascertained by the pleadings and affidavits before the Court.

*Meade Johnson and Company*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Obviously, when there is no dispute about the critical facts, summary judgment serves to eliminate the expense and delay of trial. However, when there exists "a disagreement about the facts or the inferences to be drawn from them, a trial is required to resolve the conflicting versions of the parties." *Peterson v. Lehigh Valley District Council*, 676 F.2d 81, 84 (3d Cir.1982).

Upon examination of the pleadings and affidavits, we find that numerous issues of material fact exist, which preclude the entry of summary judgment at this juncture.

■ We shall first turn to the First Count of the Complaint in which the Debtor seeks to compel the turnover of a 1983 Oldsmobile pursuant to 11 U.S.C. § 543.[2] The Defendant asserts legal title solely by virtue of the fact that the Certificate of Title to said automobile is in his name. Although the Debtor does not dispute the fact that the Title is in the Defendant's name, it asserts an equitable ownership or interest in the Oldsmobile because the corporation made the loan for the vehicle's purchase and because it made $4,716.82 in payments toward its purchase.[3] We do note that, since we have no idea if anyone else paid off the balance of the loan, or who did so, it is impossible for us to determine the extent of the Debtor's interest. However, if the Debtor's allegations are accurate, it appears to be entitled to a declaration that its interest in the vehicle is $4,716.82.

■ We shall now turn to the Second Count of the Complaint, in which the Debtor seeks to avoid the $50,000.00 payment made to the Defendant on or about December 30, 1983, as a preference under § 547 of the Bankruptcy Code. On first consider-

ation, it is difficult to conceptualize how what was ostensibly a sale of stock of the Debtor-Corporation could possibly be an avoidable transfer *by* the corporation to the seller of the stock. However, the Debtor has submitted several affidavits along with relevant documents in support of a rather convincing claim that the payment was in fact a payment of an antecedent debt owed by the Debtor to the Defendant which the Son and the Defendant recited as a stock-purchase at the Defendant's insistence and presumably to serve his interests. There does not appear to be any dispute that the requirements of § 547(b) were met if the transaction is in fact properly characterized as a debt-payment. The Debtor's undisputed submissions to the Court allege, inter alia, that the Debtor owed at least $32,-500.00 to the Defendant at the time of said payment, and that, up to the time of said payment, the Debtor had paid interest on said debt to the Defendant on a monthly basis. There also appears no dispute that the Debtor was insolvent, as it had reported a loss of $150,923.00 on its 1983 Federal Income Tax Return and that shareholder equity, as of December 31, 1983, was a loss of $182,873.00; and that the Defendant received more than creditors of the same class received on account of the said "payment," if that characterization, as it appears, is accurate.

Resolving the facts and the inferences drawn from the facts in the light most favorable to the Debtor, who opposes the within Motion for Summary Judgment, we find that a factual issue remains as to whether the monies transferred to the Defendant were in actuality made in satisfaction of an antecedent debt. Another factual question exists as to whether the Son was acting in an individual or corporate capacity in the transfer of the $50,000.00.

2. We believe that the Debtor's claim properly falls within 11 U.S.C. § 542 instead of § 543, as there is no allegation that the Defendant is a "custodian," as defined in 11 U.S.C. § 101(10).

3. In any event, it is clear that we would not grant Defendant's Motion for Summary Judg-

ment on the sole basis of his claim of legal title. Under Pennsylvania law, legal title to a vehicle is the only evidence of ownership. *Semple v. State Farm Automobile Ins. Co.*, 215 F.Supp. 645, 647 (E.D.Pa.1963).

In turning to the Third Count of the Complaint in which the Debtor seeks to avoid the $50,000.00 transfer as a fraudulent transfer under § 548 of the Code, the same issue as to the proper characterization of the transfer is pivotal. Thus, summary judgment is likewise an inappropriate disposition of this Count as well.

With respect to the Defendant's Counterclaim, we find a lack of clarity as to the precise nature of the claims raised as well as material issues of fact as to the intent and purpose of the February 20, 1986, letter which apparently forms the sole basis of the Defendant's Counterclaim. We do not find the meaning or significance of the letter to be self-evident. However, we must confess that even the reading of the letter by the Defendant is a weak support for contentions of double-dipping of fees or harassment as are raised by the Defendant. Rather, it appears that the Debtor's Counsel was involved in the laudable end of trying to resolve a matter which, involved as it is with claims of fraud and over-reaching by a son against a father, would have been best amicably resolved. We add that, if the Son's claims are accurate, the Defendant should strongly consider resolving this matter by agreeing to a judgment in favor of the Debtor in the amount of the Debtor's indebtedness at the time of the transaction of December 15, 1983, plus the amount paid by the Debtor to the Bank on the auto loan.

For the reasons stated herein, we will enter an Order denying Defendant's Motion for Summary Judgment, and further adding terms which we hope will bring about a final resolution of this dispute.