**In re Patricia Anne KRIDLOW, Debtor.**

**Andrew N. Schwartz, Trustee, Patricia Anne Kridlow, Plaintiffs,**

**v.**

**Prudential Insurance Company of America, Prudential Property and Casualty Insurance Company, Pruco, Inc and Their Affiliates, Defendants.**

**Bankruptcy No. 97–35168DAS.
Adversary No. 98–0833.**

United States Bankruptcy Court,
E.D. Pennsylvania,
Philadelphia Division.

April 29, 1999.

Andrew N. Schwartz, Philadelphia, PA for trustee.

F. Emmet Ciccone, Havertown, PA, General Counsel for Debtor.

Harris R. Rosen, Philadelphia, PA, Special Counsel for Debtor.

Kathleen Piperno, Philadelphia, PA, Former Counsel for Debtor.

David M. McCormick, Philadelphia, PA, for Defendants.

Walter S. Jenkins, Sweeney, Sheehan, & Spencer, PC, Philadelphia, PA for Debtor in tort action hired by Defendants.

Frederic Baker, Ass't. U.S. Trustee, Philadelphia, PA, United States Trustee.

*OPINION*

DAVID A. SCHOLL, Chief Judge.

*A. INTRODUCTION*

Presently before us in this adversary proceeding ("the Proceeding") asserting "bad faith" insurance claims arising out of the individual voluntary Chapter 7 bankruptcy case of PATRICIA ANNE KRIDLOW ("the Debtor") are two motions for

summary judgment. One ("the Defendants' Motion"), filed by PRUDENTIAL INSURANCE COMPANY OF AMERICA ("Prudential"), PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY ("Prupac"), and PRUCO, INC. ("Pruco") (collectively, "the Defendants"), invokes collateral estoppel arising from Findings of Fact Discussion and Conclusions of Law filed to support a decision in its favor in *Christopher v. Prupac,* Dec. Term, 1994, No. 2543 (Phila.Co.C.P. March 8, 1999) ("the *Christopher* Action," "the *Christopher* Decision"). The other ("the Plaintiffs' Motion") seeks partial summary judgment in favor of the Plaintiffs on the issue of the Defendants' failure to post a sum of over $5 million as an appeal bond on the Debtor's behalf.

The principal issues raised by the Defendants' Motion, to which we devote most of our attention, are (1) whether the pendency of a post-trial motion relative to the *Christopher* Decision renders that Decision non-"final;" and (2) whether "privity" exists between *Christopher* Decision plaintiff, also a plaintiff in a vehicular-accident personal injury claim against the Debtor, and the Plaintiffs.

We hold that the presence of the same counsel and interests establishes sufficient privity between the plaintiffs, in the two actions and that the detailed *Christopher* Decision may properly be deemed final, subject to possible reconsideration if that Decision is reversed, modified, or vacated. Therefore, we grant the Defendants' motion in part, but only as to claims addressed in the *Christopher* Decision. The claims raised in the Plaintiffs' Motion which were not raised or capable of being raised in the *Christopher* Action, which relate exclusively to the Debtor, are not precluded. We further hold that sufficient factual disputes remain—particularly whether the Defendants' failure to purchase the appeal bond could possibly be deemed a cause justifying a decree that the Defendants are liable for the entire tort judgment exceeding $4 million—to preclude summary judgment as requested in that Motion.

## B. FACTUAL AND PROCEDURAL HISTORY

The Debtor's bankruptcy case was filed on December 12, 1997. Although whether this incident "prompted" the filing, as we stated in *In re Kridlow,* 1999 WL 97939, at *1 (Bankr.E.D.Pa. Feb. 19, 1999) ("*Kridlow I* "), is now a subject of dispute, the event which led to significant litigation, including the Proceeding and the *Christopher* Action, was the Debtor's striking an adult of limited mental capacity, pedestrian Richard Summers, whose guardian is Eva Christopher, with her automobile on March 9, 1991. The injuries to Summers apparently resulted in medical bills to him of approximately $1 million.

The first lawsuit filed as a result of the incident was a tort action by Christopher against the Debtor in 1993. The second was the *Christopher* Action in December 1994. The Complaint in the *Christopher* Action alleged that Prudential, originally named as the only defendant, had refused to offer her more than $100,000 in liability and $5,000 first-party medical benefits, which it alleged were its policy limits, when in fact it was allegedly obligated to pay medical benefits totaling $277,000. Prudential was specifically alleged to have fraudulently misrepresented the policy limits when it did the following acts:

(a) intentionally misrepresented the amount of first party benefit coverage, said misrepresentations being material misrepresentations;

(b) knew or should have known that its duly authorized agents, servants, workmen and/or employees made said material misrepresentations and knew or should have known that said material misrepresentations were false;

(c) knew or should have known that plaintiff guardian would rely on said material misrepresentation;

(d) intended that said false and material misrepresentations would be acted upon by plaintiff guardian;

(e) knew or should have known that plaintiff guardian was unaware of the falsity of said material misrepresentations because the information was solely in the possession of defendant, Prudential Insurance Company.

In December 1996, before the *Christopher* Action was decided, the tort action brought by Christopher against the Debtor was scheduled for trial. Although the Defendants offered to settle for what they claimed were the policy limits, Christopher nevertheless chose to go to trial. The Defendants provided the defense. A jury awarded Christopher over $4.3 million.

Notes produced in discovery in the course of the Proceeding indicate that the Defendants' counsel, Walter Jenkins, Esquire, believed that the strategy of Christopher's counsel, Harris R. Rosen, Esquire, and his associates, was a scheme to extend its liability in excess of its policy limits. Jenkins also believed that liability was questionable because of Summers' own lack of care, and that the verdict for Christopher was influenced by bias of the trial judge. Therefore, Jenkins filed an appeal on the Debtor's behalf to the Superior Court of Pennsylvania ("the Super Ct.") from the $4.3 million verdict.

The parties' policy contains the following provisions relative to the Defendants' obligation to defend:

If persons claim an insured caused them bodily injury or property damage in the accident, we may investigate, and settle or defend any claim covered under this part in the way that we decide is appropriate. If suit is brought on a claim covered under this part, we will defend an insured, at our expense, with attorneys we choose. Our obligation to defend a claim or suit ends when we have paid the applicable limit of liability for damages resulting from an accident.

. . .

*Appeal Bonds*

We will pay the cost of necessary appeal bonds if we decide to appeal the case to a higher court.

Irrespective of the meaning of the clause relating to appeal bonds, the Defendants were unwilling to expend more than $120,000 on a bond, as they believed that so doing would exceed their policy-limit obligations. They therefore filed motions in the trial court and the Super.Ct. requesting waiver of the appeal bond as a prerequisite for a supersedeas. These efforts were unsuccessful. They then apparently advised the Debtor that she would have to make her own arrangements if she wished to obtain a supersedeas. Not surprisingly, the Debtor was unable to do so and, stating in her deposition that she feared, *inter alia*, that Christopher would be able to take possession of her home unless she did so, ultimately filed bankruptcy.

The Debtor's bankruptcy case was originally administered as a no-asset case and a March 10, 1998, deadline to oppose the Debtor's discharge or dischargeability of any of her debts passed without a filing. However, ANDREW SCHWARTZ, Esquire ("the Trustee") advised this court, in a report due April 30, 1998, that this case contained potential assets, in the form of the Debtor's claims against the Defendants. Therefore, a May 11, 1998, order setting a September 1, 1998, claims bar date and a December 31, 1998, deadline for filing the Trustee's final audit papers was established. The Debtor was discharged from all of her debts, including her obligations to Christopher, by an order of May 15, 1998.

On November 17, 1998, the Trustee filed an uncontested and hence ultimately successful application to appoint Rosen as his special counsel to pursue his claims, as the Debtor's representative, against the Defendants. It will be recalled that Rosen had represented Christopher in the claims against the Debtor and also in the *Christopher* Action on his client's behalf against the Defendants. The Proceeding, naming

the Trustee and the Debtor as plaintiffs ("the Plaintiffs"), was filed by Rosen on December 16, 1998. The Complaint filed in the Proceeding sets forth claims for breach of contact, bad faith, and punitive damages, alleging the following wrongful acts by the Defendants:

(a) permitting an excess judgment to be entered against [the Debtor];

(b) misrepresenting policy coverages to the Estate of ... Summers which prevented settlement of the third-party claim;

(c) failing to answer demand letters from the Estate's ... counsel;

(d) failing to respond to excess letters from the Estate's ... counsel;

(e) frivolously refusing to pay the policy proceeds and holding hostage the third-party coverage under the policy in an attempt to influence the first-party benefit claim;

(f) breaching [the Defendants'] agreement to negotiate a settlement in good faith;

(g) breaching [their] fiduciary duty towards [the Debtor];

(h) failing to post the appeal bond as required in [the] contract of insurance which forced [the Debtor] into bankruptcy;

(i) violating the Pennsylvania Unfair Insurance Practices Act;

(j) failing to act in good-faith as required under Pennsylvania law; and

(k) otherwise breaching said agreement.

The Proceeding first came to our attention on January 7, 1999, at a hearing on the Plaintiffs' motion to obtain expedited discovery from the Defendants. In a colloquy of that date, the Defendants' counsel expressed an intention to file, *inter alia*, a motion to disqualify Rosen as the Plaintiffs' counsel due to his alleged conflicts of interests. In an order of January 8, 1999, a briefing schedule for any such filings was established; a trial was scheduled on March 23, 1999; and the deadline for the Trustee to file his audit papers in the main case was extended to December 31, 1999.

In *Kridlow I* we denied the ultimately-filed motion to disqualify Rosen and a motion to dismiss Prudential and Pruco as parties, and granted a motion to strike the Plaintiffs' jury demand. In ruling on the disqualification motion we observed that Christopher and the Plaintiffs "both have a common interest in vigorously pursuing any insurance benefits to which the Debtor is entitled from the Defendants," *id.* at *2, and thus Rosen served common rather than conflicting interests.

On March 4, 1999, we entertained certain discovery motions of the parties, which ultimately produced a decision reported at 1999 WL 138872 (Bankr.E.D.Pa. March 10, 1999). We also learned for the first time about the existence of the *Christopher* Action and ascertained that a decision in that Action, which was likely to touch on at least some issues in common with the Proceeding, was imminent. We therefore scheduled a status hearing in the Proceeding on March 10, 1999.

The *Christopher* Decision was in fact handed down on March 8, 1999. After the status hearing on March 10, 1999, we entered an order requiring the Defendants to file a summary judgment motion based on the *Christopher* Decision by April 12, 1999; for the Plaintiffs to respond by April 26, 1999; and for any necessary trial to be put off to May 18, 1999.

On April 1, 1999, somewhat to our surprise, the Plaintiffs' Motion appeared. The Defendants, at a further discovery-motion hearing of April 5, 1999, agreed to respond to the Plaintiffs' Motion, as well as file their own summary judgment motion, by April 12, 1999.

The Defendants' submissions were timely filed on April 12, 1999. The Plaintiffs filed not only their reply to the Defendants' Motion but also a counter-reply supporting their own Motion early, on April 23, 1999.

The Plaintiffs' Motion aggressively seeks a judgment of $4,369,326.88, consistent with the amount of Christopher's judgment against the Debtor, plus post-judgment interest and unspecified compensatory damages to the Debtor's "financial reputation," all as a result of the Defendants' failure to post the appeal bond. In the course of the supporting arguments, the Defendants are accused of forcing the tort action trial to go forward and refusing to pay the appeal bond, thus creating "the type of case that has earned insurance companies their unsavory reputation as plunderers whose sole objective is to further their profit margins instead of protecting their insureds." Memorandum of Law of Plaintiffs Andrew N. Schwartz, Trustee, and Patricia Kridlow, Debtor, in Support of Plaintiffs' Motion for Partial Summary Judgment, at 1. Not to be outdone in rhetoric, the Defendants begin their Memorandum of Law, at 1, with the following passage:

> When neither the facts nor the law favor your position, it seems you must argue sympathy, emotion and paranoid ideation. Once again, Prupac is put to answering half truths, innuendos and flat out misleading arguments to defend themselves against scurrilous allegations. The plain truth is that had counsel for Christopher been competent, Christopher would have had the policy limits under Mrs. Kridlow's policy in 1991 or 1992 and clearly by 1993; Kridlow would or would not have had to file for bankruptcy due to her other financial problems and various Courts would not have been burdened with any of the four lawsuits arising out of a tragic accident of March 9, 1991.

In their desire not to be outdone, the Plaintiffs begin their Supplemental Memorandum of Law of Plaintiffs Andrew N. Schwartz, Trustee, and Patricia Kridlow, Debtor, in Support of Plaintiffs' Motion for Partial Summary Judgment, at 1–2, respond as follows:

The shrill rhetoric and convoluted logic of Prudential's response to plaintiffs' motion for partial summary judgment is not unlike the rumblings of a condemned man as his neck is fit securely in the hangman's noose. The instrument of Prudential's doom is a thick rope of documentary evidence which provides compelling evidence of Prudential's intent to force Patricia Kridlow into bankruptcy in order to avoid posting the appeal bond of $5,243,192.25 in the state court appeal of *Christopher v. Kridlow.* The documentary evidence overwhelmingly refutes prudential's depiction of plaintiffs' case as "paranoid ideation." Accordingly, plaintiffs turn to this Court to carry out the financial sanctions that Prudential so richly deserves.

In the Defendants' Motion before us, the Defendants, with less rhetoric, argue that the *Christopher* Decision collaterally estopped all aspects of the Proceeding, asserting that all four of the elements for application of collateral estoppel, as set forth in, *e.g., C.D.G., Inc. v. Workers' Compensation Appeal Board,* 702 A.2d 873, 875 (Pa.Cmwlth.1997), are satisfied:

> (1) the issue decided in the prior case is identical to the one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the doctrine is asserted was a party or in privity with the party in the prior case and had a full and fair opportunity to litigate the issue; and (4) the determination in the prior proceeding was essential to the final judgment.

The Plaintiffs counter with argument that *none* of these requirements are satisfied. They claim to raise facts regarding certain letters and revelations prior to and immediately after the tort action and also to raise the appeal bond issue which was not addressed in *Christopher* Decision. The finality of that Decision is questioned due to the presence of a motion for a judgment not withstanding the verdict, for judgment in her favor, and for a new trial, with a request for consideration by the

Court *en banc,* a copy of is attached to the Plaintiffs' response to the Defendants' Motion, which has allegedly caused the Decision not to be reduced to judgment. This motion was argued before the state court trial judge on April 27, 1999, and is presently under advisement until at least the completion of briefing in mid-May. It is also argued the Christopher is neither a party to the Proceeding nor is in privity with the Plaintiffs, and that the Debtor had no opportunity to assert *her* rights in the *Christopher* Action.

## C. DISCUSSION

1. *Summary Judgment Is Appropriate Only When the Moving Party is Entitled to Judgment as Requested as a Matter of Law; Clearly, that State of Affairs Does Not Exist As to the Plaintiffs' Motion.*

In *In re Cornell & Co.,* 1997 WL 695614, at *3–*4, (Bankr.E.D.Pa. Nov. 7, 1997), we synthesized the well-known authorities addressing the legal standards applicable to summary judgment motions in bankruptcy adversarial proceedings as follows:

> Rule 56 of the Federal Rules of Civil Procedure ("F.R.Civ.P."), governing summary judgment, is made applicable in the bankruptcy court by Federal Rule of Bankruptcy Procedure ("F.R.B.P.") 7056. Pursuant to F.R.Civ.P. 56, [pursuant to which] summary judgment should be granted when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The court's role in applying this rule is not to weigh the evidence but to determine only whether there is a disputed, material fact for determination at trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence sub-
>
> mitted must be in the form of affidavits, depositions, answers to interrogatories, admissions or similar materials, provided they would be admissible at trial, and must establish all of the elements upon which the movant, as plaintiff, bears the burden of proof. *See id.*
>
> Once a plaintiff submits sufficient evidence to establish its right to judgment, the burden falls upon the defendant to produce evidence of its own tending to demonstrate the existence of a triable factual dispute. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538, (1986). The court is required to view the evidence in a light most favorable to the nonmoving party and, to that end, should make all reasonable inferences in favor of the nonmovant. *Anderson, supra,* 477 U.S. at 255, 106 S.Ct. 2505; *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.,* 90 F.3d 737, 743 (3d Cir.1996); and *Acevedo v. Start Plastics, Inc.,* 834 F.Supp. 808, 810 (E.D.Pa.1993). If, upon viewing all the evidence, there is no genuine issue of fact and the plaintiff is entitled to judgment as a matter of law, summary judgment must be granted. *Matsushita, supra,* 475 U.S. at 587, 106 S.Ct. 1348; and *Boykin v. Bloomsburg University of Pennsylvania,* 893 F.Supp. 378, 393 (E.D.Pa.1995), aff'd, 91 F.3d 122 (1996). A genuine factual issue exists, precluding entry of summary judgment, when the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Anderson, supra,* 477 U.S. at 251–52, 106 S.Ct. 2505; and *Acevedo, supra,* 834 F.Supp. at 810. This court thusly summarized the applicable standards in *In re Rosco Investors, L.P.,* 1996 WL 107503, at *5 (Bankr.E.D.Pa. March 6, 1996):
>
> > "While the Supreme Court has recently stated that summary judgment is not be regarded as 'a disfavored procedural short cut,' *Celotex Corp. v. Catrett,* 477 U.S. 317, [327, 106 S.Ct.

2548, 91 L.Ed.2d 265] (1986), courts have consistently been cautious in granting summary judgment. Earlier, the Supreme Court stated that 'Rule 56 should be cautiously invoked to the end that parties may always be afforded a trial where there is a bona fide dispute of facts between them.' *Associated Press v. United States*, 326 U.S. 1, [6, 65 S.Ct. 1416, 89 L.Ed. 2013] (1945). More recent decisions of the Court of Appeals have characterized summary judgment as 'a drastic remedy,' *Hollinger v. Wagner Mining Equipment Co.*, 667 F.2d 402, 405 (3d Cir.1981), (quoting *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir. 1981), in turn quoting *Tomalewski v. State Farm Insurance Co.*, 494 F.2d 882, 884 (3d Cir.1974)). This court has . also similarly characterized the summary judgment procedure. *See In re Saler*, 84 B.R. 45, 48 (Bankr. E.D.Pa.1988); *In re Leedy Mortgage Co.*, 76 B.R. 440, 445 (Bankr.E.D.Pa. 1988); *In re American International Airways, Inc.*, 74 B.R. 691, 696 (Bankr.E.D.Pa.1987); and *In re H & H Beverage Distributors, Inc.*, 65 B.R. 243, 244 (Bankr.E.D.Pa.1986)."

■ As in *Cornell, id.* at *4–*5, it is apparent that the Plaintiffs' submissions do not support a judgment in their favor as a matter of law. The principal authority on which the plaintiffs rely is *Richmond v. Kelly*, 11 PHILA. CO. RPTS. 313 (Phila.Co.C.P.1984).

In denying a motion for waiver of an appeal bond filed by an insurer on behalf of its insured, the *Richmond* court launches into a lengthy dictum regarding the obligation of that insurer to pay an appeal bond. *Id.* at 315–21. However, we cannot attach too much significance of the *Richmond* court's dictum as applied to the instant Plaintiffs' motion. First, the Editor's Note in the Reporter indicates that the *Richmond* decision denying the waiver of security for a stay pending appeal was reversed by the Super.Ct. *Id.* at 314.

Second, the policy language at issue in *Richmond* does not, as does the instant policy language, make it clear that there was no obligation of the Defendants to appeal on the Debtor's behalf. *Compare* the Defendants' policy language quoted at page 337 *supra.*

Nevertheless, assuming *arguendo* that we accept the Plaintiffs' argument that, having exercised their discretion to appeal, any discretion to refuse posting the full requisite bond was eliminated, even if it meant posting over $5.2 million to defend an insured whose policy limit was $ 110,-000, which appears to be a counterintuitive reading of the Defendants' responsibilities to the Debtor, there is no connection between the alleged wrongful conduct of the Defendants and the relief sought in the Motion. Perhaps some damages to the Debtor might be justified, if it could be proven that a policy violation occurred, that this action forced the Debtor into a bankruptcy which she otherwise would not have needed to resort, and that the bankruptcy filing caused her certain ascertainable damages. However, the record as it exists supports none of these premises. It is totally speculative whether putting up a bond would have assured a different ultimate result on appeal, and it is thus totally unclear whether the Debtor would have ultimately had to have filed a bankruptcy anyway. And assuming that it were proven that the Defendants' actions was wrongful and did cause the Debtor to file bankruptcy, it is also unclear how the damages for same could and should be measured.

■ It is even more difficult for us to understand how the Defendants' failure to post a bond for the Debtor could be found to have created a liability to pay the entire amount of the judgment to Christopher, as the Plaintiffs' Motion seems to suggest that we should conclude. That such liability could arise appears to us to be a long stretch of the principle that an insurer who acts in bad faith towards its insured may be liable for the entire judgment obtained

by the insured's opponent. *See, e.g., Cowden v. Aetna Casualty & Surety Co.*, 389 Pa. 459, 468, 134 A.2d 223, 227 (1957). Rather, it seems to us that proof that the insurer's bad faith caused the liability of the insured is prerequisite. Thus, in *Cowden,* the insurer's bad faith exposed its insured to liability in excess of the policy, creating the requisite causal link.

Here, however, the insured is protected from liability to Christopher by her bankruptcy discharge. The posting of the appeal bond is only significant if the Defendants' actions are proven to have squandered a potential beneficial result for the Debtor. It is difficult to see why Christopher should benefit, as surely the Motion intends, because the Debtor failed to post an appeal bond which would have stayed execution on Christopher's judgment. It seems to us that Christopher benefitted from the Debtor's failure to post an appeal bond. Thus, this demand of the Plaintiffs in support of their Motion smacks of an effort on Rosen's part not calculated to benefit the Debtor at all, but to benefit Christopher and possibly Rosen himself, through receipt of additional attorneys' fees. In this sense the conflict issue raised in *Kridlow I* has raised its head, and the Trustee is urged to oversee the direction of this aspect of the litigation.

In any event, the links between the Defendants' alleged wrongful refusal to put up an extremely large appeal bond and the damages sought therefrom in the Plaintiffs' Motion are so weak as to require the denial of this Motion.

2. *Summary Judgment for the Defendants Based on Collateral Estoppel Is Appropriate as to Most of the Plaintiffs' Claims, an Exception being Claims Relating to the Appeal of the Tort Action.*

■ Although summary judgment cannot be granted whenever material fact questions remain unresolved, summary judgment is often appropriate when a claim or defense at issue is based upon *res judicata* (claim preclusion from an earlier action) or collateral estoppel (issue preclusion from an earlier action). *See* 11 J. MOORE, FEDERAL PRACTICE, § 56.11[1][b], at 56–85 (3d ed.1998); and 18 J. MOORE, *supra,* § 131.50[3], at 131–171. In such circumstances the court need only compare the claims in the original action, the result in the original action, and the claims presently before the court. As noted at pages 339 – 40 *supra,* the parties agree that issue preclusion is at issue and they apparently agree that the collateral estoppel principles under Pennsylvania law as set forth in *e.g., C.D.G., supra,* are pertinent. *See, e.g., Bailey v. Ness,* 733 F.2d 279, 281 (3d Cir.1984) ("in cases where a party seeks to rely on a state court judgment to preclude relitigation of the same issues in federal court, a federal court must look to state law and its assessment of the collateral estoppel doctrine to determine the extent to which the state would given its own judgment collateral estoppel").

As we indicated at pages 339–40 *supra,* the Plaintiffs raised three significant issues, which we paraphrase as follows: (1) are the Plaintiffs "in privity" with Christopher as to the claims at issue? (2) Is the *Christopher* Decision sufficiently "final" to permit collateral estoppel effect to be attributed to it? and (3) assuming that some degree of collateral estoppel arises from the *Christopher* Decision, to what issues raised on the Proceeding may it be applied?

■ We believe that a most helpful discussion of the privity issue appears in *First Options of Chicago, Inc. v. Kaplan,* 913 F.Supp. 377, 382–88 (E.D.Pa.1996), citing, *e.g., EEOC v. United States Steel Corp.,* 921 F.2d 489 (3d Cir.1990) (EEOC found to be in privity with private complainant); *Iacaponi v. New Amsterdam Casualty Co.,* 379 F.2d 311 (3d Cir.1967), *cert. denied,* 389 U.S. 1054, 88 S.Ct. 802, 19 L.Ed.2d 849 (1968) (insurer found in privity with insured); and *Bruszewski v. Unit-*

*ed States,* 181 F.2d 419 (3d Cir.1950) (Government found in privity with private steamship company). *See also, e.g., In re Botany Industries, Inc.,* 17 B.R. 631, 633 (Bankr.E.D.Pa.1982) (objectors in three related bankruptcy cases found in privity with each other); *Helmig v. Rockwell Mfg. Co.,* 389 Pa. 21, 31–32, 131 A.2d 622, 627 (1957) (privity exists as to party on which a prior party's liability was based); 18 J. MOORE, *supra,* § 131.40[3][e], at 131–141 to 131–147; and RESTATEMENT (SECOND) OF JUDGMENTS, § 29, at 291–303 (1982) ("the Restatement").

The *Kaplan* court points out, 913 F.Supp. at 383, that

> [t]he term privy "is merely a word used to say that the relationship between one who is a party on the record and another is close enough to include the other within the res judicata." *United States Steel Corp.,* 921 F.2d at 493 (citing *Bruszewski v. United States,* 181 F.2d 419, 423 (3d Cir.), *cert. denied,* 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950)); *Phillips v. Kidder, Peabody & Co.,* 750 F.Supp. 603, 607 (1990) (Privity is a legal determination for the trial court as to whether the relationship between the parties is sufficiently close to support preclusion:).

The *Kaplan* court then goes on to say that privity has typically been found to exist, *inter alia,*

> (2) where the nonparty controlled the prior litigation, and (3) where the party adequately represented the nonparties' interests in the prior proceeding. *See, e.g., Latham v. Wells Fargo Bank,* N.A. 896 F.2d 979, 983 (5th Cir.1990); 1B Moore's Federal Practice ¶ 0.411[1], at III–215 [ (2d ed.1996) ]. *Id.* at 383–84.

The *Kaplan* court further states that the privity requirement must "acknowledge the realties of the parties' relationship," *id.* at 384, and that the central issue of adequacy of representation of the interests of the party sought to be bound in the initial action must focus upon "alignment of the interests and incentives of the party to the prior litigation and the nonparty against whom res judicata is claimed." *Id.* at 386.

We believe that, as to the scope of claims raised in the *Christopher* Action, Christopher and the Plaintiffs are "in privity" to each other. In fact, as to all but issues (a), (g), and (h) asserted in the Proceeding, as set forth at pages 337 – 38 *supra,* Rosen appears to be raising claims in the Proceeding on behalf of Christopher rather than the Plaintiffs. Rosen has clearly been a perhaps excessively vigorous advocate against the Defendants on all issues, and hence can scarcely be said to have been an "inadequate representative" as to any pertinent issues.

■ We recognize that privity does not exist as to issues (a), (g) and (d), relating to representation of the Debtor at trial and the appeal bonds. These issues were in any event not addressed in the *Christopher* Decision. Hence, the Defendants' attempt to sweep these issues into the scope of the judgment on its Motion must fail. This conclusion also supports the Plaintiffs' argument that these particular issues are not identical to those decided in the *Christopher* Decision.

■ The foregoing conclusions leave open for decision only the issue of finality. We began from the premise that the *Christopher* Decision does not appear to be interlocutory on its face, is very complete and detailed in its 76 Findings of Fact and 23 pages in length, and includes what appears to be a final order. Christopher's post-trial motion is before the state court which rendered the decision, but it seems unlikely that the trial court would alter its carefully-considered decision in a case tried to it. Of course, if the trial court denies this motion, a subsequent appeal to the Super.Ct. is a distinct possibility.

The issue of finality where a decision is subject to appeal is somewhat problematic under Pennsylvania law because, as the Court of Appeals in *Bailey, supra,* 733

F.2d at 281–82; and this court in *In re Kovalchick*, 175 B.R. 863, 873 (Bankr. E.D.Pa.1994), have recognized, several pertinent Pennsylvania decisions point in opposite directions on this issue. As *Bailey* indicates, 733 F.2d at 281, there is a

first line of cases [which] involves several early decisions holding that a state court judgment is not considered a final judgment for purposes of res judicata or collateral estoppel while an appeal is pending. *See Souter v. Baymore*, 7 Pa. 415 (1847); *Smalls Appeal*, 15 A. 807, 23 W.N.C. 25 (1888); *Columbia National Bank v. Dunn*, 207 Pa. 548, 56 A. 1087 (1904); and *Bryar v. Campbell*, 177 U.S. 649, 20 S.Ct. 794, 44 L.Ed. 926 (1900) (interpreting Pennsylvania law). Moreover, two recent federal court decisions have relied upon this interpretation of a final judgment. *United States v. Employers Mutual Liability Insurance Co. of Wisconsin*, 495 F.Supp. 840, 842 (W.D.Pa.1980) and *In re Levitt*, 18 B.R. 595, 598 n. 11 (Bankr.E.D.Pa.1982)

*See also Roodveldt v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 585 F.Supp. 770, 776 (E.D.Pa.1984). However, the *Bailey* court also recognizes, *id.* at 281–82, that there is a

second line of cases which the Pennsylvania state courts have relied upon consistently in their more recent decisions, however, [which] adopts the position that a judgment by a state court is considered final for res judicata or collateral estoppel purposes "unless or until it is reversed." *Philadelphia Electric Co. v. Pennsylvania Public Utility Commission*, 61 Pa.Cmwlth. 325, 337, 433 A.2d 620, 626 (1981) (citation omitted). *See also Rheem v. The Naugatuck Wheel Co.*, 33 Pa. 356 (1859); *Woodward v. Carson*, 86 Pa. 176 (1878); *In re Elkin*, 289 Pa. 327, 137 A. 459 (1927); *Wallace's Estate*, 316 Pa. 148, 174 A. 397 (1934); *Helmig v. Rockwell Manufacturing Co.*, 389 Pa. 21, 131 A.2d 622, *cert. denied*, 355 U.S. 832, 78 S.Ct. 46, 2

L.Ed.2d 44, *reh. denied*, 355 U.S. 885, 78 S.Ct. 146, 2 L.Ed.2d 115 (1957).

To compound further the uncertainty in the state law, several federal courts have relied on this second line of cases when applying Pennsylvania law to cases with res judicata or collateral estoppel issues. *See Commercial Union Assurance Co. v. Pucci*, 523 F.Supp. 1310, 1318 (W.D.Pa.1981); *Nash v. Reedel*, 86 F.R.D. 13, 15 (E.D.Pa.1980); and *In re Meade Land and Development Co., Inc.*, 1 B.R. 279, 283 (Bankr.E.D.Pa.1979).

*See also Krall v. Pennsylvania*, 903 F.Supp. 858, 860 (E.D.Pa.1995); and *Kellner v. Aetna Casualty & Surety Co.*, 605 F.Supp. 326, 330 (M.D.Pa.1984); and *General Accident Fire & Life Assurance Corp. v. Flamini*, 299 Pa.Super. 312, 316, 445 A.2d 770, 772 (1982) (per SPAETH, J.) ("Pennsylvania law takes a broad view on what constitutes a 'final judgment' for purposes of res judicata.").

Although there are numerous and conflicting decisions regarding the effect or non-effect of a pending appeal on the finality of a trial court decision for collateral estoppel purposes, there are only a few sources discussing the impact of post-trial motions on a decision's finality. In *Everson v. Everson*, 494 Pa. 348, 358, 431 A.2d 889, 894 (1981), in considering whether an Arizona state court decision which was subject to post-trial motions could be enforced in Pennsylvania, the court stated that

the mere fact that a party has made a motion in the trial court to vacate the judgment and to grant a new trial or to modify the judgment, or enter a new judgment does not deprive the judgment of its conclusive effect in another action between the parties.

We also considered the issue under federal law in *In re Pennsylvania Truck Lines, Inc.*, 1994 WL 247348, at *1 (Bankr. E.D.Pa. June 1, 1994), and stated that "the presence of [post-trial] motions does not generally deprive a judgment of finality,"

citing the Restatement, § 13, com. *f*, at 135, which provides as follows:

> A judgment otherwise final for purposes of the law of res judicata is not deprived of such finality by the fact that time still permits commencement of proceedings in the trial court to set aside the judgment and grant a new trial or the like; nor does the fact that a party has made such a motion render the judgment non-final. This is the case even when a statute or rule of court provides that the judgment cannot be executed upon or otherwise enforced during the period allowed for making such a motion and the further period until the motion if made is decided. The judgment ceases to be final if it is in fact set aside by the trial court, as it would be upon the granting of a motion for a new trial.
>
> There have been differences of opinion about whether, or in what circumstances a judgment can be considered final for purposes of res judicata when proceedings have been taken to reverse or modify it by appeal. The better view is that a judgment otherwise final remains so despite the taking of an appeal unless what is called an appeal actually consists of a trial de novo; finality is not affected by the fact that the taking of the appeal operates automatically as a stay or supersedeas of the judgment appealed from that prevents its execution or enforcement, or by the fact that the appellant has actually obtained a stay or supersedeas pending appeal.
>
> The pendency of a motion for new trial or to set aside a judgment, or of an appeal from a judgment, is relevant in deciding whether the question of preclusion should be presently decided in the second action. It may be appropriate to postpone decision of that question until the proceedings addressed to the judgment are concluded.
>
> Application of this Comment may give rise to a problem of inconsistent judgment when a judgment under appeal, relied on as a basis for a second judgment, is later reversed....

*See also* 18 J. MOORE, *supra*, § 131.30[2][c][iv], at 131–100.

■ The stature and status of the particular post-trial motions may also be significant in determining the issue of finality. *Compare In re Bova*, 211 B.R. 803, 808–09 (Bankr.E.D.Pa.1997) (entry of an order granting a petition to open a Pennsylvania state court judgment destroys its finality); and *Kovalchick*, *supra*, 175 B.R. at 873 (pendency of a petition to appeal before the Pennsylvania Supreme Court of a matter affirmed by the Pennsylvania Superior Court does not affect finality).

The foregoing passage from the Restatement raises the question of the practical effect that a post-trial motion or appeal has on a judgment otherwise giving rise to collateral estoppel effect. As the court in *Bailey* deemed appropriate, 733 F.2d at 282–83, this court could merely stay any further litigation of the Proceeding until the state court post-judgment motions and appellate process run their courses. However, the *Bailey* court does not appear to suggest that a stay should be accorded in all circumstances and, with the exception of the court in *Ashford v. Skiles*, 837 F.Supp. 108, 114–15 (E.D.Pa.1993), we are unaware of any court which, subsequent to *Bailey*, has felt compelled to do so.

We are not anxious to suspend all activity in the Proceeding and thereby prevent the closing of the Debtor's case for the period of several years which would be likely to lapse before all post-judgment motions and appeals from the decision in the *Christopher* Action are exhausted. However, the alternatives are not without pit-falls. If we accord collateral estoppel to the *Christopher* Decision and it is reversed or modified on post-judgment motions or appeals, it would certainly not be proper to continue to accord it collateral estoppel effect. The subsequent decision would then be entitled to collateral estoppel effect.

An even more problematic resolution would be for us to disregard the *Christopher* Decision, go forward with the trial on the same issues decided in that Decision on May 18, 1999, and thereafter render a contrary decision. Our decision, which under applicable federal law would be final for collateral estoppel purposes irrespective of any appeal, *see In re Bergman*, 103 B.R. 660, 667–68 (Bankr.E.D.Pa.1989); and J. MOORE, *supra*, § 131.30[2][c][ii], at 131–97 to 131–98, would require reversal of the state court decision. Such a result appears contrary to 28 U.S.C. § 1738, requiring this court to give full faith and credit to state court decisions.

We conclude that the best resolution is to accord the *Christopher* Decision conditional collateral estoppel effect. That is, we will accord it collateral estoppel effect as to the issues decided therein unless and until that Decision is reversed, modified, or vacated. If any of these contingencies occur, we will entertain a motion to vacate or modify our decision. While this may seem to cast a cloud of uncertainty over our within decision, it does not in our view do so to any degree which is significantly additional from that to which any order of this court is generally subject. Any of our decisions is always subject to reconsideration upon a timely showing of extraordinary circumstances. *But see In re Rex*, 217 B.R. 57, 62–63 (Bankr.E.D.Pa.), *aff'd*, C.A. No. 98–1058 (E.D.Pa. April 3, 1998) (reconsideration must be justified under the applicable F.R.B.P. and F.R.Civ.P.).

We therefore conclude that the Defendants are conditionally entitled to summary judgment, on the ground of collateral estoppel arising from the *Christopher* Decision, as to all issues except issues (a), (g), and (h) raised in the Proceeding Complaint. Specifically, this ruling excepts the appeal bond issue and possibly any additional issues arising from the alleged permission of the entry of an "excess judgment" against the Debtor. Since we also deny herein the Plaintiffs' cross-Motion relating to the appeal bond issue, that issue must be tried on May 18, 1999.

## D. CONCLUSION

An order consistent with the conclusions reached in this Opinion will be entered.

### ORDER

AND NOW, this 29th day of April, 1999, upon consideration of the Plaintiffs' Motion for Partial Summary ("the Plaintiffs' Motion") and the Defendants' Motion for Summary Judgment ("the Defendants' Motion") relative to the above-captioned adversary proceeding ("the Proceeding"), and the submissions of the parties arguing their positions relative to these Motions, it is HEREBY ORDERED as follows:

1. The Plaintiffs' Motion IS DENIED.

2. The Defendants' Motion IS GRANTED in part.

3. Subject to the conditions set forth in the within Opinion, judgment is entered in favor of the Defendants and against the Plaintiffs as to all issues raised in the Plaintiff's Amended Complaint except those relating to the alleged entry of "an excess judgment" against PATRICIA ANNE KRIDLOW ("the Debtor") and the Defendants' alleged failure to post an appeal bond on the Debtor's behalf.

4. The trial of the issues remaining in the Proceeding and a status hearing in the main case remain scheduled on

TUESDAY, MAY 18, 1999, AT 9:30 A.M. and shall be held in Bankruptcy Courtroom No. 1, Second Floor, 900 Market Street, Philadelphia, PA 19107.